**Bert KERSEY, Claimant–Appellant,**

v.

**AUTRY MORLAN, INC., Employer–Respondent.**

**No. SD 31883.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 10, 2013.

David M. Edwards of Cape Girardeau, MO, for Appellant.

Richard L. Montgomery, Jr. of Columbia, MO, for Respondent.

JEFFREY W. BATES, J.

Bert Kersey (Claimant) appeals from a final award entered by the Labor and Industrial Relations Commission (Commis-

sion) denying compensation on a claim he filed against his employer, Autry Morlan, Inc. (Employer). Claimant claimed that he suffered hearing loss and tinnitus as the result of an accident at work. The Commission denied compensation because it found that: (1) Claimant's hearing loss was not compensable; and (2) the accident was not the prevailing factor in causing his tinnitus. Claimant contends the Commission's decision denying compensation is not supported by sufficient evidence. We affirm.

## I. Factual and Procedural Background

Claimant, born in April 1958, had worked as an auto mechanic or body repairman for numerous employers since the 1970s. In early 2006, Claimant began working for Employer in Sikeston, Missouri as an auto mechanic. Listening for the cause of engine noise was one of Claimant's duties.

On July 11, 2007, Claimant was investigating the cause of alternator noise in a customer's engine. To perform this task, Claimant used a mechanic's stethoscope to amplify the noise so it could be heard more clearly. As Claimant applied the stethoscope to the alternator, "something popped very loud inside of it." Claimant's hearing was impaired by the loud noise, and he immediately reported the injury to Employer. Employer sent Claimant to Ferguson Medical Group for an evaluation, where he was examined that same day by Dr. S. Gordon Jones. Tests conducted on Claimant showed that he had "high frequency [hearing] loss." During follow-up appointments through the end of July, Dr.

Jones found that Claimant's hearing loss was improving, but he continued to "have some high frequency losses."

On August 9, 2007, Claimant was examined by Dr. Troy Major at Southeast Missouri ENT Consultants in Cape Girardeau. Following an audiogram, Dr. Major diagnosed Claimant as having "[h]earing loss, neural" and "[u]nspecified tinnitus." Dr. Major recommended hearing protection, and "upon approval from work comp ... hearing aids with Dr. Rebecca McDonald AUD." Later that month, Dr. McDonald fitted Claimant with hearing aids for both ears.

In July 2008, Claimant returned to Dr. McDonald for follow-up testing. Additional tests showed no significant changes in Claimant's hearing loss from the prior year, and Claimant reported continued ringing in both ears.

In November 2008, Claimant was evaluated, at Employer's request, by Dr. Anthony Mikulec. Claimant reported a "long history of noise exposure working at various jobs mostly in the auto repair industry." Claimant also reported exposure to noise from hunting (which ceased in 1989) and from riding a 900cc motorcycle two to three times a week when the weather permitted. Claimant complained of bilateral tinnitus since the July 11, 2007 incident. Dr. Mikulec performed audiometric tests and reviewed the prior audiograms performed by Dr. Jones.[1] Both tests showed that Claimant had bilateral high-frequency sensorineural hearing loss. Dr. Mikulec assessed Claimant's hearing loss by using the "ANSI reference standards according to Missouri Workers Compensation Rules[.]"[2] Claimant's audiometric test re-

---

1. According to Dr. Mikulec's report, Claimant had a 1989 audiogram, which was not available for review.

2. "ANSI" stands for "American National Standards Institute ... a voluntary membership organization that develops consensus standards nationally for a wide variety of devices and procedures." *Thatcher v. Trans*

sults showed that his hearing loss did not meet the minimum threshold for compensability:

> Averaging the lowest responses to pure tone air conduction frequencies at 500, 1000, and 2000 Hertz, the average hearing level was calculated at 16.6 dB for the right ear and 10 dB for the left ear. Subtracting a correction factor of 5 dB for non-occupational hearing loss based on age in years greater than 40 years the corrected hearing level was calculated at 11.67 dB and 5 dB for both right and left ears respectively. Multiplying 1.5% hearing loss for each decibel loss above 26.0 dB ANSI reference standards according to Missouri Workers Compensation Rules, the percentage hearing loss was calculated at 0% for the right ear and 0% for the left ear.

Dr. Mikulec also evaluated Claimant's complaint of tinnitus. The doctor did not attribute Claimant's tinnitus to the July 11, 2007 incident. Dr. Mikulec explained that: (1) the exact cause of tinnitus is uncertain; and (2) persons exposed to high levels of industrial noise and trauma may or may not develop the condition.

In June 2009, Claimant filed a claim for compensation. In November 2010, Claimant underwent a medical examination by Dr. Annamaria Guidos at the Brain and NeuroSpine Clinic of Missouri. Claimant reported that he had hearing loss and ringing in both ears as a result of the July 11, 2007 incident. After conducting a physical examination and reviewing the medical records, Dr. Guidos opined that: (1) Claimant had bilateral sensorineural hearing loss and tinnitus; and (2) his persistent and constant tinnitus warranted a 15% body as a whole permanent disability rating.

In February 2011, a hearing was held before an administrative law judge (ALJ). All exhibits offered into evidence were admitted by agreement of the parties, and Claimant was the only witness to testify. Claimant testified that, without use of his hearing aids, he continued to have problems hearing. The hearing aids helped both his hearing loss and tinnitus. He requested continuation of the treatment he had been receiving and an award of permanent partial disability.

Thereafter, the ALJ issued a final award denying compensation. With respect to Claimant's tinnitus, the ALJ noted the absence of any opinion from Dr. Mikulec or Dr. Guidos that the July 11th incident was the prevailing factor in causing this medical condition:

> Dr. Mikulec stated that the tinnitus "may" be of industrial cause. Although Dr. Guidos gave a rating of 15% permanent partial disability for constant and persistent tinnitus, she did not give a causation opinion. Based on all of the evidence presented, I find that Dr. Mikulec's opinion was more credible than Dr. Guidos on the issue of causation.

The ALJ found that the remaining issues of future medical care and permanent partial disability were moot. In a 2–1 decision, the Commission adopted the ALJ's findings and conclusions, and entered a final award denying compensation. This appeal followed.

## II. Standard of Review

■ Because the Commission adopted the ALJ's findings and decision, we will review them in this appeal from the Com-

---

*World Airlines,* 69 S.W.3d 533, 536 (Mo.App. 2002). The ANSI reference in this case is to ANSI occupational hearing loss standards. *See id.* at 536–38; § 287.197.2 RSMo Cum.

Supp. (2006) (providing that the decibel standards for measuring hearing loss "are based on the most current ANSI occupational hearing loss standard").

mission's final award denying compensation. *Lacy v. Federal Mogul,* 278 S.W.3d 691, 699 (Mo.App.2009); *Birdsong v. Waste Management,* 147 S.W.3d 132, 137 (Mo.App.2004). We review the Commission's decision to determine whether it is supported by competent and substantial evidence upon the whole record. Mo. Const. art. V, § 18; § 287.495.1 RSMo (2000)[3]; *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003).[4] The issue for us to decide is whether the Commission could have reasonably made its findings and reached its result after considering all the evidence before it. *Hornbeck v. Spectra Painting, Inc.,* 370 S.W.3d 624, 629 (Mo. banc 2012).

▇▇▇ We defer to the Commission's factual findings and recognize that it is the Commission's function to determine credibility of witnesses and weight to be given to their testimony. *Id.; Birdsong,* 147 S.W.3d at 137. Conflicting medical theories present a credibility determination for the Commission to make. *Lacy,* 278 S.W.3d at 699. "[D]eciding which one of two conflicting medical theories it should accept is a determination particularly for the Commission. A determination of what weight it will accord expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court." *Aldridge v. Southern Missouri Gas Co.,* 131 S.W.3d 876, 882 (Mo.App.2004) (citation omitted). Therefore, the Commission's decision in this case as to which of the medical experts to believe is binding on this Court. *Lacy,* 278 S.W.3d at 699; *see, e.g., Proffer v. Federal Mogul Corp.,* 341 S.W.3d 184, 187–88 (Mo.App.2011);

*Roberts v. Mo. Hwy. & Transp. Comm'n,* 222 S.W.3d 322, 333–34 (Mo.App.2007). "Commission decisions that are interpretations or applications of law, on the other hand, are reviewed for correctness without deference to the Commission's judgment." *Birdsong,* 147 S.W.3d at 138. We independently review questions of law. *Johnson v. Denton Constr. Co.,* 911 S.W.2d 286, 287 (Mo. banc 1995).

## III. Discussion and Decision

An employer must furnish compensation according to the provisions of Chapter 287 "for personal injury or death of the employee by accident arising out of and in the course of the employee's employment." § 287.120.1. An "accident" is defined as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by the specific event during a single work shift." § 287.020.2. An "injury" is defined as "an injury which has arisen out of and in the course of employment." § 287.020.3(1). "An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." *Id.* "The prevailing factor" is defined as "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.*

▇▇▇ Claimant bore the burden of proving all essential elements of his claim. *See Pruett v. Federal Mogul Corp.,* 365 S.W.3d 296, 304–05 (Mo.App.2012); *Royal v. Advantica Restaurant Group, Inc.,* 194 S.W.3d 371, 376 (Mo.App.2006). Medical causation that is not a matter of common

---

3. Unless otherwise specified, all further references to statutes are to RSMo Cum.Supp. (2006).

4. Some cases, overruled by *Hampton* only with respect to the proper standard of review, are cited in this opinion in support of other principles of law not affected by the *Hampton* ruling. *See Hampton,* 121 S.W.3d at 224–32.

knowledge or experience must be established by scientific or medical evidence showing the relationship between the complained-of medical condition and the asserted cause of the condition. *See Bond v. Site Line Surveying,* 322 S.W.3d 165, 170 (Mo.App.2010). The issues of causation and work-relatedness are questions of fact to be decided by the Commission. *See Royal,* 194 S.W.3d at 376; *Angus v. Second Injury Fund,* 328 S.W.3d 294, 299 (Mo.App.2010).

■ Claimant presents four points of error, but we address only his second point because it is dispositive of this appeal.[5] In Point II, Claimant contends the Commission erred by deciding that the July 11th accident was not the prevailing factor in causing Claimant's hearing loss and tinnitus. Claimant argues that the Commission's decision is not supported by sufficient evidence. We will address the hearing loss and tinnitus separately.[6]

*Hearing Loss*

■ Claimant first contends the Commission erred by denying the claim for future medical treatment and permanent partial disability attributable to Claimant's hearing loss. He argues that the denial of this aspect of his claim was not supported by the evidence. We find no merit in this argument.

The compensability of job-related hearing loss is governed by § 287.197 and 8 CSR 50–5.060. This statute and regulation apply to hearing loss resulting from either: (1) "prolonged exposure to harmful noise in employment," which is defined as an occupational disease pursuant to § 287.067.4 and 8 CSR 50–5.060(3); or (2) "hearing loss due to a traumatic incident (that is, a single accident such as an explosion, a blast or a blow on the head)[.]" 8 CSR 50–5.060(2); *Baltz v. Frontier Airlines,* 842 S.W.2d 547, 550 n. 2 (Mo.App. 1992) (noting that traumatic hearing loss is properly compensable pursuant to § 287.120, rather than § 287.067, because the injury does not result from prolonged exposure to harmful noise in the work environment). Traumatic hearing loss "shall be measured as prescribed in section 287.197, RSMo and this rule." 8 CSR 50–5.060(4); *see Thatcher v. Trans World Airlines,* 69 S.W.3d 533, 536 (Mo.App.2002) (containing a detailed discussion of the method by which § 287.197 and 8 CSR 50–5.060 require hearing loss to be measured). Thus, § 287.197 and 8 CSR 50–5.060 collectively specify how traumatic hearing loss is measured and when such hearing loss is compensable. If a traumatic hearing loss does not meet the minimum prescribed threshold in the statute and rule, then the work accident cannot be the "pre-

5. We need not address Claimant's first, third and fourth points. Claimant's first point contends the Commission erred in failing to address the threshold issue of whether an "accident" occurred on July 11, 2007. Claimant's testimony established that he suffered an accident at work on July 11th, and Employer conceded the point during oral argument. Additionally, the Commission's repeated references to the "July 11, 2007 work accident" imply a finding that an accident had occurred. The dispositive issue below was whether the accident was the prevailing factor in causing Claimant's injuries. We address that issue in our discussion of Claim-

ant's second point. His third and fourth points challenge the Commission's determination that the issues of future medical treatment and partial permanent disability were moot. Based on our disposition of Point II, we likewise conclude that these issues are moot.

6. The hearing loss and tinnitus components of the claim must be evaluated separately because "tinnitus, although often accompanying hearing loss, is a separate compensable injury." *Poehlein v. Trans World Airlines, Inc.,* 891 S.W.2d 505, 507 (Mo.App.1994).

vailing factor" in causing either a compensable injury or any level of compensable permanent disability. *See* § 287.197; 8 CSR 50–5.060; § 287.020.3(1).

In the case at bar, Dr. Mikulec was the only expert who evaluated Claimant's hearing loss pursuant to the requirements of § 287.197 and 8 CSR 50–5.060. Dr. Mikulec ultimately determined that Claimant's hearing loss did not meet the minimum threshold for compensability. The Commission found Dr. Mikulec credible and relied upon his opinion in deciding that Claimant was not entitled to compensation for traumatic hearing loss. We defer to that determination. *Gregory v. Detroit Tool & Engineering*, 266 S.W.3d 844, 846 (Mo.App.2008). It was Claimant's burden to prove that the work accident caused him to sustain a compensable hearing loss. *See Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012). The Commission found that Claimant failed to do so, and our review of the record supports the finding. Therefore, the Commission's decision to deny future medical treatment and permanent partial disability for Claimant's hearing loss was correct.[7]

### Tinnitus

Claimant next contends that the Commission erred by denying the claim for future medical treatment and permanent partial disability attributable to Claimant's tinnitus. He argues that the Commission erred by relying on Dr. Mikulec's opinion in determining that the work accident was not the prevailing factor in causing Claimant's tinnitus. We disagree.

It was Claimant's burden to prove that the accident was the prevailing factor in causing his tinnitus. *See Bond v. Site Line Surveying*, 322 S.W.3d 165, 170 (Mo. App.2010). The Commission found that Claimant failed to prove this element of his claim. Based upon our review of the record, that determination was correct because no medical expert provided the necessary causation testimony. Dr. Jones and Dr. Major did not express any opinion at all as to the cause of Claimant's tinnitus. Neither did Claimant's expert, Dr. Guidos. Dr. Mikulec, whom the Commission found credible, opined that the cause of Claimant's tinnitus was unknown. Accordingly, none of the medical testimony was sufficient to meet Claimant's burden of proving a direct causal link between his tinnitus and his job. *See id.* at 171. Claimant argues that Dr. Mikulec's opinion was faulty, but that argument is misdirected. Employer was not obligated to disprove Claimant's case or establish that another noncompensable event caused Claimant's injuries. *Id.* In any event, the Commission found Dr. Mikulec more credible than Dr. Guidos, and we are bound by that credibility determination. *See Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 631–32 (Mo. banc 2012); *Lacy v. Federal Mogul*, 278 S.W.3d 691, 699 (Mo.App.2009). The Commission's determination of what weight it will accord expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court. *Lacy*, 278 S.W.3d at 699; *Aldridge v. Southern Missouri Gas Co.*, 131 S.W.3d 876, 882 (Mo.App.2004). It was Claimant's

---

7. Hearing tests performed by Dr. Jones and Dr. Mikulec showed that Claimant had bilateral high-frequency sensorineural hearing loss. That hearing deficit is not compensable because the loss of hearing ability for frequencies above two thousand cycles per second does not constitute a hearing disability. *See* § 287.197.1. Claimant's testimony that the use of hearing aids improved his hearing also furnishes no ground for relief. "No consideration shall be given to the question of whether or not the ability of an employee to understand speech is improved by the use of a hearing aid." § 287.197.9.

burden to prove that the work accident caused his tinnitus. *See Johme v. St. John's Mercy Healthcare,* 366 S.W.3d 504, 509 (Mo. banc 2012). The Commission found that Claimant failed to do so, and our review of the record supports the finding. Therefore, the Commission's decision to deny future medical treatment and permanent partial disability for Claimant's tinnitus was correct.

For the reasons stated above, the Commission did not err by denying Claimant's request for future medical care and permanent partial disability relating to his hearing loss and tinnitus. Point II is denied.

The Commission's final award is affirmed.

DANIEL E. SCOTT, P.J., and DON E. BURRELL, C.J., concur.